VIOLETT et al. v. HORBACH.

(Supreme Court, Appellate Division, First Department. May 10, 1907.)

1. PLEDGES—SALE OF COLLATERALS—RATIFICATION.

Plaintiffs recovered judgment January 8, 1906, against defendant, foreclosing a lien on certain stocks, and empowering plaintiffs to sell the stock "upon the curb" in the city of New York in payment of the judgment. Notice of such judgment was served on defendant's attorney on the day it was entered, and plaintiffs, being unable to ascertain whether the judgment would be paid, sold the stock on the curb in small lots between January 11th and 16th, leaving a deficiency of $881.87. After receiving notice of the sale, defendant appealed, and urged the fact that plaintiffs had sold the stock as a reason why the undertaking on appeal should not be larger than $1,000, which suggestion was acted on by the court. The appeal being unsuccessful, defendant objected that the sale was void, because made without notice. *Held*, that defendant's acts, with knowledge of the sale, constituted a ratification thereof.

2. SAME—REPUDIATION—TIME.

Where a pledgor had knowledge of the pledgee's sale of the pledged property, an objection to such sale not made until more than a year after the sale was too late.

Appeal from Special Term, Kings County.

Action by Atwood Violett and others against Paul W. Horbach. From an order granting a motion to direct plaintiffs to deliver to defendant certain shares of stock, they appeal. Reversed. Motion denied.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William P. Maloney, for appellants.

A. S. Gilbert, for respondent.

SCOTT, J. The plaintiffs appeal from an order requiring them to deliver to defendant 2,100 shares of the common stock of the Manhattan Transit Company, upon receiving from the defendant the amount of a judgment recovered herein by plaintiffs against defendant, with the costs of appeal and interest.

The circumstances leading up to this order are peculiar. The plaintiffs are cotton brokers, and acted as such brokers for the defendant in certain speculative transactions in cotton. To secure them against loss he deposited with them 2,100 shares of Manhattan Transit Company stock. This action was brought to recover a balance claimed to be due to plaintiffs on such transactions, to fix the amount due, to determine that plaintiffs were entitled to a lien on said transit company stock for the amount due them, and to foreclose such lien. The action was tried before a referee, and resulted in a judgment fixing the amount due to plaintiffs at $7,029.72, declaring that plaintiffs were entitled to a lien therefor upon the 2,100 shares of Manhattan Transit Company stock, and authorizing and empowering the plaintiffs to sell said shares "upon the curb" in the city of New York, crediting the proceeds thereof upon their judgment, and, if there should be a surplus, to deposit the same with the chamberlain of the city of New York. The judgment did not require notice of sale to be given to defendant, nor did it in terms dispense with the necessity for such notice. It is alleged by

the plaintiffs, and is not denied, that it would be impracticable to give notice of a sale "upon the curb." The above-described judgment was entered on January 8, 1906, and notice of the entry thereof was on the same day served on the defendant's attorney. After the entry of the judgment, and before any proceedings were taken thereunder, plaintiffs' attorney inquired of the attorney for the defendant as to what the defendant intended to do about paying the judgment, but received no satisfactory reply. Thereafter, and on January 11, 12, 15, and 16, 1906, the plaintiffs sold the Manhattan Transit Company stock "on the curb," in lots varying from 100 to 800 shares. The reason given by plaintiffs for selling the stock in small lots and on different days is that the stock had no value except a speculative one, and to have sold 2,100 shares at one time would have depressed the price to a nominal figure. The defendant does not controvert this statement. The proceeds of the sale amounted to $6,147.85, which plaintiffs credited upon their judgment, and on January 27, 1906, notified defendant of the fact of the sale and its result, and that execution would be issued for the balance still due upon the judgment, amounting to $881.87. The defendant appealed from the above-mentioned judgment (just when does not appear), but no step was taken by him to secure the same on appeal or to stay proceedings thereon until January 30, 1906, after notice of the sale of the stock had been received. A motion was then made to the court below to fix the amount of the undertaking to be given on appeal, and the fact that the plaintiffs had already sold the stock and realized over $6,000 thereon was urged as a reason why an undertaking should not be required in a larger sum than $1,000. This argument was apparently accepted by the court, and the amount of the undertaking to be given was fixed at the sum suggested by the defendant. The appeal was unsuccessful, and the judgment was affirmed, with costs, with a reduction of the extra allowance.

In the meantime the price "on the curb" of Manhattan Transit Company stock had somewhat increased, and the plaintiff now claims that, inasmuch as the judgment did not specifically authorize a sale of the stock without notice, such a sale was invalid. Even if this contention were to be admitted to its full extent, it would not justify the order now appealed from, because, even if the sale without notice was unauthorized, the defendant must be deemed to have ratified it. He received notice of the sale on January 27, 1906, and made no protest, and took no steps to disaffirm the sale until a year later. It is perfectly well settled that in such a case the principal must disavow the act of his broker within a reasonable time after it comes to his knowledge, or he will be deemed to have acquiesced in it; and if he fails to repudiate the acts within a reasonable time after notice, his failure will operate as a ratification. Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183. Furthermore, the defendant successfully used and urged the sale of the stock as a reason why he should be required to give less security on appeal than might otherwise have been fixed. Under all these circumstances, he must be deemed to have ratified the plaintiffs' sale of the stock, and consequently can have no claim arising therefrom.

The order must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.